Evelyn Piller, Appellant, v. Metro Premium Company and Jeanette R. Zussman, Trading as Interstate Pop Corn Company, Appellees.

Gen. No. 43,962.

56

Opinion filed June 25, 1947.  Rehearing denied July 17, 1947.  Released for publication July 18, 1947.

RUBENSTEIN & BECKER, of Chicago, for appellant; HARRY BECKER, of Chicago, for counsel.

I. HARVEY LEVINSON and LOUIS ROSENFELD, both of Chicago, for appellees.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a forcible detainer action filed March 1, 1946. Plaintiff seeks possession of the store space in the premises at 1243–45 South Wabash Avenue. The case was tried before a jury and the verdict was in favor of the defendants.  Judgment was entered on the verdict October 8, 1946 and plaintiff has appealed.

In her Bill of Particulars plaintiff stated that defendant, Metro Premium Co., was in possession under a lease; and that it breached the lease by permitting use of the rental space for unauthorized purposes by subletting and by permitting occupancy by a person other than the lessee, namely Interstate Pop Corn Co. The breaches of the lease were denied in the answer

of the Metro Company. It averred that plaintiff acquired the premises in September 1945, subject to the Metro Company's lease dated December 25, 1944 and that plaintiff accepted rents for October to December 1945 with knowledge that the name Interstate Pop Corn Co. was displayed on the windows of the premises. Jeanette R. Zussman doing business as Interstate Pop Corn Co. answered denying the sublease or occupancy.

Plaintiff contends that the sole question in the case is whether the Interstate Pop Corn Co. occupied the premises. She claims this was shown as a matter of law by the uncontroverted facts; that she had the right, therefore, to terminate the lease; that the breach was continuous and the doctrine of estoppel inapplicable; and that she was prejudiced by the argument to the jury by defense counsel and by instructions given to the jury.

The lease of the space involved, subject to which plaintiff bought the premises, was made December 25, 1944 for the term May 1, 1945 to April 30, 1947 at $250 per month. It provided that the lessee was to occupy the space for "theater premiums and supplies and no other purpose whatsoever" and that lessee would not allow the premises to be occupied in whole or in part by any other person without consent of the lessor. Plaintiff gave notice of the termination of the lease for the alleged breaches February 11, 1946.

Irving Zussman, called under Section 60 by plaintiff, testified that he was the husband of Jeanette Zussman; that he was president of the Metro Premium Co., a Massachusetts corporation; that his wife is the owner of the Interstate Pop Corn Co. located in Boston, Massachusetts; that it is an independent business; that Metro Premium Co. has been in possession of the space since 1942; that he has no financial interest in the Interstate Company and was not a salaried employee; that he received a 5 percent mark-up on

orders which the Metro Company took for pop corn to be supplied by Interstate; that the pop corn orders were from theaters in Chicago which the Metro Company sold other theater supplies; that the orders were filled in Boston and that Jeanette Zussman had never seen the premises involved in this case and had no knowledge of the arrangement by which he carried on the services for Interstate; that he had 18 offices throughout the United States; that in Cleveland and Chicago he cooperates on the same basis with the Interstate Company, while in New York the two companies are about 7 or 8 blocks apart; and that there is no Interstate Pop Corn Co. in Chicago.

Photographs in evidence disclose that the premises containing the space sought consist of a six story building. At sidewalk level there is what appears to be a general entrance to the lobby of the building at No. 1243. South of this door is a large plate glass window bearing the name Interstate Pop Corn Co. This window ends at what appears to be a pillar. The entire building is divided at the pillar. South of the pillar is an entrance under number 1245. This appears to be the entrance into the Metro Co. and south of the entrance is another large plate glass window bearing the name Metro Premium Co. The first floor space is divided only by a beaver board partition which has an opening the size of a door, providing access between the stores on either side of the partition. Thus, the entrance at 1245 serves both sides of the partition. This partition was on the premises when originally leased by the Metro Company. Inside the entrance at number 1243 is a doorway leading from the lobby into the space north of the partition. Over this doorway is a sign, "Interstate Pop Corn Co." Zussman testified that he put the Interstate Co. sign up himself without consulting his wife who "doesn't even know the place exists." He later testified that he imagined his wife knew of his occupancy of the store and that they

had a mutual understanding with reference to his use of the Interstate Company's name.

The Interstate Pop Corn Co. is listed in the Chicago Telephone Directory "for advertising purposes." Metro Premium Co. has a separate listing. Metro Co. in soliciting pop corn business uses stationery bearing only the name Interstate Pop Corn. He says his only connection with the Interstate Company is that he furnishes advice to his wife. He has been associated with the Metro Co. for about 15 years and the Interstate Company was organized just a few years before the trial, at which time he caused Interstate Company's signs to be placed on the premises. Before it was organized, he sold pop corn to Chicago theaters. Metro began to take orders for Interstate when the latter was organized. The 6 or 7 employees at 1243–45 South Wabash Avenue are employees of Metro Co. Some of these took telephone calls and read letters, etc. in connection with the Interstate Company's business. Some sample bags of pop corn are kept on the premises. Each bag contains 100 pounds and on rare occasions Metro has as many as 100 bags on hand to serve as samples for the Chicago theaters. This is always the property of the Metro Co., however, for the Interstate Co. has no property or assets of any nature on the premises.

■■ The foregoing evidence bearing on the issue of occupancy was uncontroverted. Provisions, in leases, of the kind relied on by plaintiff and forfeitures are not favored in law. *Peacock v. Feltman,* 243 Ill. App. 236. To show that defendant had permitted the Interstate Company to occupy the rented space, plaintiff had to show that defendant permitted the Interstate Company to possess it. *Walters v. The People,* 18 Ill. 194, pp. 199 and 200; *Walters Admx. etc. v. The People, ex rel. Beadles,* 21 Ill. 178; *Drake, et al. v. Ogden,* 128 Ill. 603, p. 609; and *Consolidated Coal Co. v. Schaeffer,* 135 Ill. 210, p. 215.

We think it can be fairly said as a matter of law on the uncontroverted evidence, that plaintiff has not shown that the Interstate Pop Corn Co. occupied or possessed the rented space or any of it. The cause should not have gone to the jury. There is no need, however, to send the case back to the trial court to reach the conclusion we are impelled to draw on this record. There was no breach of the covenant relied on. Plaintiff sued for possession. She has no right of possession as against defendant.

In view of this conclusion we need not consider questions of prejudice to plaintiff arising out of instructions on improper argument of counsel.

For the reasons given the judgment is affirmed.

*Judgment affirmed.*

Lewe, P. J., and Burke, J., concur.